**EXHIBIT A**

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| WAKE COUNTY | 23 CVS 21414-910 |

| | | |
|---|---|---|
| SLOAN RACHMUTH, EDUCATION FIRST ALLIANCE, INC., EDUCATION FIRST ALLIANCE PAC, and EDUCATION FIRST ALLIANCE NC, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **FIRST AMENDED COMPLAINT** |
| KARI DONOVAN, | ) ) | |
| Defendant. | | |

Plaintiffs, pursuant to Rule 15 of the North Carolina Rules of Civil Procedure and with leave of Court, hereby amend their Complaint with the filing of this First Amended Complaint.

NOW COME Plaintiffs Sloan Rachmuth, Education First Alliance, Inc., Education First Alliance PAC, and Education First Alliance NC, Inc., and complaining of Defendant Kari Donovan, allege and say as follows:

## PARTIES

1.    Plaintiff Mrs. Rachmuth is a citizen and resident of Wake County, North Carolina.

2.    Plaintiff Education First Alliance, Inc. is a non-profit corporation duly organized and existing under the laws of the state of North Carolina with a principal place of business in Wake County, North Carolina.  Education First Alliance, Inc. was formed in January 2021.

3.    Plaintiff Education First Alliance PAC is a political action committee formed in February 2022.  Education First Alliance PAC is an unincorporated association with a principal place of business in Wake County, North Carolina.

4.      Plaintiff Education First Alliance NC, Inc. is a non-profit corporation duly organized and existing as an independent expenditure political committee under the laws of the state of North Carolina with a principal place of business in Wake County, North Carolina. Education First Alliance NC, Inc. was formed in August 2023.

5.      Education First Alliance, Inc., Education First Alliance PAC, and Education First Alliance NC, Inc. are all owned and managed by Sloan Rachmuth.  They were all formed to support conservative political positions related to education issues in North Carolina.  Education First Alliance, Inc., Education First Alliance PAC, and Education First Alliance NC, Inc. are all hereinafter collectively referred to as "EFA."

6.      Defendant Kari Donovan is a citizen and resident of Wake County, North Carolina.

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction over this action under and by virtue of, *inter alia*, N.C.G.S. § 7A-240 and N.C.G.S. § 7A-243 and N.C.G.S § 1-253 *et seq*.

8.      The Court has personal jurisdiction over Defendant under and by virtue of, *inter alia*, N.C.G.S. §1-75.4.

9.      Venue is proper in this Court under by virtue of, *inter alia,* N.C.G.S. §1-79 and §1-82.

## INTRODUCTION

10.      Sloan Rachmuth ("Mrs. Rachmuth") owns and manages EFA, which is a non-profit political committee based in North Carolina devoted to supporting conservative political positions related to education issues in North Carolina.  EFA has never supported or opposed candidates in a federal election.  EFA was founded in January 2021.  Shortly afterwards, Defendant Kari Donovan ("Ms. Donovan"), who is a conservative political blogger and social media influencer, began a suffocating, unrelenting smear campaign against Mrs. Rachmuth and EFA by repeatedly

(on a weekly and sometimes daily basis) posting false and defamatory statements about Mrs. Rachmuth and EFA on her twitter account, by sending false and defamatory emails to Mrs. Rachmuth's supporters and followers, by publishing false and defamatory videos, and by repeatedly making other false and defamatory statements about Mrs. Rachmuth.

11.     As a result of the Defendant's demonstrably false, misleading, scurrilous, and defamatory statements and related actions, Mrs. Rachmuth and EFA have suffered severe and irreparable damage to their reputation and character and have suffered actual monetary damages. Plaintiffs, by filing this Complaint, seek to hold Defendant accountable for her false and defamatory statements.

## FACTS

### A. Background.

12.     Mrs. Rachmuth started EFA in January 2021.  EFA's mission was to connect parents, teachers, and the community in advocating for better public schools in North Carolina. EFA is one of North Carolina's largest conservative parent groups.  It has three board members and many partner organizations.  It has over 100 donors.  Its president, Mrs. Rachmuth, has appeared on Fox News, Newsmax, and Real America's Voice.  Other EFA representatives have also appeared on Fox News.  EFA has been instrumental in supporting the passage of the Fairness in Women's Sports Act, the Youth Protection Act, and the Parental Bill of Rights.  It has been instrumental in blocking child exploitation in K-12 public schools.  EFA also actively supports North Carolina legislative and local political candidates that espouse platforms and views consistent with EFA's values.  Leading and managing EFA is Mrs. Rachmuth's full-time job.

13.     Defendant Ms. Donovan is a local conservative independent journalist that frequently covers politics.

14.     Mrs. Rachmuth briefly met Ms. Donovan in or around November 2020.

15.     After Mrs. Rachmuth started EFA, in or around February 2021, Ms. Donovan contacted Mrs. Rachmuth and expressed an interest in joining EFA's efforts.

16.     In March 2021, Ms. Donovan asked Mrs. Rachmuth if she could do some writing for EFA.  Mrs. Rachmuth shared some of her research with Ms. Donovan, and Ms. Donovan prepared a draft article.  Mrs. Rachmuth suggested some edits for the article. Apparently upset over the edits suggested by Mrs. Rachmuth, Ms. Donovan unfollowed EFA on its social media accounts and blocked Mrs. Rachmuth from text messages.

17.     On April 12, 2021, commentator Steve Bannon announced that Mrs. Rachmuth would be appearing on his shows the following day.  Ms. Donovan called Mrs. Rachmuth out of the blue and said that she should be going on the Steve Bannon show, instead of Mrs. Rachmuth. She accused Mrs. Rachmuth of stealing her stories and said that she had ruined her life.

18.     Mrs. Rachmuth is Jewish.  On or around April 15, 2021, Mrs. Rachmuth was involved in an online discussion regarding antisemitic lessons that were being taught to children in a Charlotte school.  Ms. Donovan was not a part of this online discussion, but apparently had been following it.  Ms. Donovan joined in the discussion and made antisemitic comments directed at Mrs. Rachmuth and another Jewish participant in the discussion.

19.     Shortly thereafter, Ms. Donovan began an abusive, unrelenting smear campaign against Mrs. Rachmuth and EFA.  She made scurrilous, disparaging, false, and defamatory statements and allegations about Mrs. Rachmuth in publications (including emails, twitter posts, other social media posts and messages, videos, and text messages) to EFA employees, supporters and donors, to lawmakers, to other social media bloggers and political activists, all in an effort to utterly destroy Mrs. Rachmuth's character and reputation and to destroy and put EFA out of operation.

4

20.     In these defamatory publications, Ms. Donovan falsely, and without any basis, accused Mrs. Rachmuth and EFA of wire fraud, financial fraud, being a fake, being a fraud, and lying to the public.  She has falsely, and without any basis at all, accused Mrs. Rachmuth of infidelity and providing sex for political and/or other business favors.  She has falsely and without any basis accused Mrs. Rachmuth and EFA of ghostwriting and of plagiarizing.

21.     In June 2021, Mrs. Rachmuth, through counsel, sent a cease-and-desist letter to Ms. Donovan.

22.     In response, instead of stopping her abusive and defamatory actions, Ms. Donovan maliciously filed a false police report to Holly Springs Police and Cary Police alleging that Mrs. Rachmuth and EFA had committed wire fraud.  Additionally, Ms. Donovan maliciously filed a false report to the NC Attorney General's Office and to the FBI that Mrs. Rachmuth and the EFA had committed wire fraud.

23.     In an effort to beat Mrs. Rachmuth to the courthouse steps, Ms. Donovan filed a baseless lawsuit against Mrs. Rachmuth and EFA.  Mrs. Rachmuth filed counterclaims.

24.     Ms. Donovan's outlandish, defamatory, and harassing behavior continued.

25.     In March 2022, this prior civil case was voluntarily dismissed with prejudice as to both parties.

26.     Regardless, Ms. Donovan continued with her outlandish, defamatory, and harassing behavior.

27.     In April 2022, EFA announced speakers for their biggest public event to date.  Ms. Donovan began contacting the announced speakers to this event in an effort to dissuade them from speaking at the event.  During these conversations with the upcoming speakers, Ms. Donovan made numerous false and defamatory statements about Mrs. Rachmuth and EFA. On the day of the event, Ms. Donovan contacted EFA board members and participants of the event and spread

further false and defamatory statements about Mrs. Rachmuth and EFA, including but not limited to that Mrs. Rachmuth was evil and a criminal.

28.     On May 2, 2022, Mrs. Rachmuth, with assistance from criminal attorney James Little, filed criminal cyberstalking charges against Ms. Donovan.

29.     On June 17, 2022, with assistance from attorney Little, in exchange for a written agreement from Ms. Donovan to stop her defamatory and harassing behavior and to leave Mrs. Rachmuth alone, Mrs. Rachmuth agreed to drop the criminal charges against Ms. Donovan.

30.     Immediately, that same afternoon, Ms. Donovan breached her agreement to cease her defamatory and harassing activities and falsely posted online that the criminal charges Mrs. Rachmuth had filed against her were "fake criminal charges" and without any basis whatsoever stated that the charges Mrs. Rachmuth had filed against her had been for "sexual harassment." Nowhere in the criminal complaint was sexual harassment referenced or insinuated in any way. Mrs. Rachmuth had never sexually harassed anyone.[1]

31.     During this time, and up through the present, Ms. Donovan has continued to constantly and repeatedly, publicly disparage and defame Mrs. Rachmuth, EFA, and its employees and donors with false and scurrilous accusations through online posts, emails, texts, social media messages, and videos.

32.     On July 12, 2023, Ms. Donovan again took out cyberstalking charges against Mrs. Rachmuth.  These charges are baseless and without merit.  Ms. Donovan took these charges out with malicious intent, and her doing so constitutes abuse of process and malicious prosecution.

---

[1] It should be noted that it was Mrs. Rachmuth's impression that Ms. Donovan tried to hit on her during an April 12, 2021 phone conversation and that she later in an online message let it be known that her impression was that Ms. Donovan had tried to hit on her.  However, this was not sexual harassment, and Mrs. Rachmuth never mentioned or claimed Ms. Donovan had sexually harassed her, ever, to anyone.

33.     Upon information and belief, Ms. Donovan has reported Mrs. Rachmuth to the police for alleged stalking seven times since June 2021.  All of these reports have been baseless and without merit, and Ms. Donovan has made these reports with malicious intent.[2]

**B.**     **False Accusations of Infidelity and Operating a Fake Company or Organization.**

34.     Mrs. Rachmuth met her husband, Guy Rachmuth, in 2004.  They got married in 2007.  Their son was born in 2008 and their daughter was born in 2010.  They are still married. Mrs. Rachmuth has never been unfaithful to her husband.  Mrs. Rachmuth's family is extremely important to her.  They are a very close family.  Mrs. Rachmuth has in the past brought her children to the General Assembly to meet legislators and to observe the legislative process.

35.     Ms. Donovan is fully aware that Mrs. Rachmuth is happily married with two children.

36.     Further, as set out in detail above, EFA is a well-organized and managed political committee that has been publicly advocating for conservative education issues in North Carolina over the past two years.   It is a real and legitimate company with many supporters across the state that has a good track record for obtaining results.  Ms. Donovan is fully aware of EFA's well-established foothold in the conservative education arena, and she is fully aware of the support it garnishes across the state.

37.     Ms. Donovan, as with many other reporters and political activists, has a Twitter (now known as X, but is hereinafter referred to as Twitter) page and is very active on Twitter.  She has approximately ten thousand followers.

38.     On October 26, 2022, Ms. Donovan posted the following message on her Twitter page:

_____

[2] It should be noted that Mrs. Rachmuth has taken out stalking charges against Ms. Donovan during this time as well; however, this is because Ms. Donovan was in fact stalking Mrs. Rachmuth.

> Politics is for grown-ups-so..if you want to know WHY would someone being dumping $100,000 into Sloan Rachmuth's pockets?  She isn't a legit group, her news is fake, her politics are insane, and she knows nothing about the subject matter… it's tits and ass-or she is a leftist.

(Defamatory Publication No. 1).

39.    The statement that Mrs. Rachmuth's "news is fake" is false and defamatory, and the statement that "she knows nothing about the subject matter" is false and defamatory.  These defamatory statements are libel *per se*.

40.    Most damaging, though, is the reference to "tits and ass" after posing the question as to why someone would be donating money to Mrs. Rachmuth and EFA.  Mrs. Rachmuth is an attractive woman.  This is a veiled implication that Mrs. Rachmuth is providing sexual favors for her donations or she is a leftist.  Both of these allegations are false and extremely damaging to Mrs. Rachmuth and EFA.  This is an allegation that Ms. Donovan has repeatedly made, *see below*, and continues to make through the present.   It is clear to the reader the implication Ms. Donovan is making here, so this defamatory statement is libel *per se*.  The meaning is all the more clear when taking into consideration other posts Ms. Donovan made during the same timeframe, so this statement is also libel *per quod*.

41.    At the time Ms. Donovan made the defamatory statements in this October 26, 2022 Twitter post she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Defendant published the statements with actual malice.

42.    On November 10, 2022, Ms. Donovan posted the following message on her Twitter page:

> The simple fact is that IF Sloan Rachmuth was trying to be some sort of Conservative watchdog group she wouldn't attack Conservative Moms-have financial fraud, criminal charges and so much fake news and lies.

It's tits and ass-or she is a leftist.

Truth hurts sometimes.

(Defamatory Publication No. 2).

43.     The statement that Mrs. Rachmuth "have financial fraud" is false and defamatory, and the statement "so much fake news and lies" is false and defamatory.  These defamatory statements are libel *per se*.

44.     Most damaging, though, is the reference to "tits and ass."  Again, this is something Ms. Donovan is repeating in her posts. This is a veiled implication that Mrs. Rachmuth is providing sexual favors for her donations or she is a leftist.  Both of these allegations are false and extremely damaging to Mrs. Rachmuth and EFA.  This is an allegation that Ms. Donovan has repeatedly made, see below, and continues to make through the present.   It is clear to the reader the implication Ms. Donovan is making here, so this defamatory statement is libel *per se*.  The meaning is all the more clear when taking into consideration other posts Ms. Donovan made during the same timeframe, so this statement is also libel *per quod*.

45.     At the time Ms. Donovan made the defamatory statements in this November 10, 2022 Twitter post she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Defendants published the statements with actual malice.

46.     On November 17, 2022, Ms. Donovan posted the following message on her Twitter page:

Sloan copies me and then tries to discredit me.. while she steals my work. She is a sociopath.  She has been doing this for two years now.  Sloan attacked Moms who were doing real legislative action then she crowns herself queen.  She has the sugar daddies to buy people-like this:

[The insert is a screenshot of Mrs. Rachmuth on a news show with 5 men.]

9

She showed up out of nowhere-had been a work-out instructor-attacked Conservative grassroots groups and made close to 100g.

That happens to no patriot.

It's tits and ass… or she is a leftist.

(Defamatory Publication No. 3).

47.     The statement that Mrs. Rachmuth "steals my work" is false and defamatory.  This defamatory statement is libel *per se*.

48.     Most damaging, though, is the reference to "sugar daddies" in conjunction with the later reference to "tits and ass."  Again, this is something she is repeating in her posts.  A sugar daddy is a man that financially supports a female in exchange for sexual favors.  This is clearly an implication that Mrs. Rachmuth is providing sexual favors for her donations, or she is a leftist.  Both of these allegations are false and extremely damaging to Mrs. Rachmuth and EFA.  This is an allegation that Ms. Donovan has repeatedly made, see below, and continues to make through the present.   It is clear to the reader the implication Ms. Donovan is making here, so this defamatory statement is libel *per se*.  The meaning is all the more clear when taking into consideration other posts Ms. Donovan made during the same timeframe, so this statement is also libel *per quod*.

49.     At the time Ms. Donovan made the defamatory statements in this November 17, 2022 Twitter post she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Defendants published the statements with actual malice.

50.     In or about June 2023, Ms. Donovan published a video about Mrs. Rachmuth on her public Facebook page.  During the video, Ms. Donovan made the following statements about Ms. Rachmuth:

She's very well funded.  She has numerous sugar daddies who will defend her and do all kinds of things to defend her.  So she's very well known for having services for sale around North Carolina and especially in the General Assembly building.

Many of the legislators are quite aware of her mental illness and her aggressive hostility and violence.  She attacked a lawyer's daughter.

She has done numerous high profile smear jobs.  So people are very well aware of her and most people in their right minds who aren't shallow, greedy, low IQ, money grubbing, stay away from her.  There are people who are attracted to her because she's very, she's very charismatic in the way that she's able to hoodwink people who are desperate.

Okay, and so she gets a little gathering of people, a gaggle of people.  And I'm going to show you, she's got a gaggle of people here.  Some of them are her fake screen names.  Some of them are people who want something from her.  Some of them are people like the Daily Haymaker.  I've heard a rumor that he's having an affair with her.  I don't know if that's true or not.

(Defamatory Publication No. 4).

51.    The statement that Mrs. Rachmuth "has numerous sugar daddies" is false and defamatory, and the statement "she's very well known for having services for sale around North Carolina and especially in the General Assembly building" is false and defamatory.  These defamatory statements are slander *per se*.

52.    The statement "Some of them are people like the Daily Haymaker.  I've heard a rumor that he's having an affair with her.  I don't know if that's true or not," is false and defamatory.  Brant Clifton is a political blogger operating under the name the Daily Haymaker.  Mr. Clifton is well known among those that follow North Carolina conservative politics.  Most everyone that viewed this video would understand and know this reference was to Brant Clifton of the Daily Haymaker.  Mrs. Rachmuth has never had an affair with Brant Clifton.  There was no rumor that he was having an affair with Mrs. Rachmuth before this publication.  There certainly was a rumor about that after this publication, but that was only because of Ms. Donovan's scurrilous, false, and defamatory accusations.  This was a categorically false defamatory statement.

Ms. Donovan cannot hide behind her defamatory accusations by attempting to couch them in the form of a "rumor" or "opinion."

53.     The clear meaning as to all of these statements is that Mrs. Rachmuth is providing sexual favors for donations or support for EFA's positions.  It is hard to imagine a more damaging accusation.  These allegations are false and extremely damaging to Mrs. Rachmuth and EFA.  It is clear to the reader the implication Ms. Donovan is making here, so this defamatory statement is slander *per se*.  The meaning is all the more clear when taking into consideration other publications Ms. Donovan made during the same timeframe, see above and below, so this statement is also slander *per quod*.

54.     At the time Ms. Donovan made the defamatory statements in this March 2023 video she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

55.     In or about April 2023, Ms. Donovan published a video about Mrs. Rachmuth on her public Facebook page.  During the video, Ms. Donovan made the following statements about Mrs. Rachmuth:

> And if you go back and you look on her Twitter account today, she's got an article there by the Daily Haymaker.  Now, I'm not sure if they're having an affair.  If he has a crush on her, or if she's getting paid, or if she's paying him to put articles in the Daily Haymaker, but his articles are also total crap.

(Defamatory Publication No. 5).

56.     The statement, "I'm not sure if they're having an affair," is false and defamatory. This defamatory statement is slander *per se*. This was a categorically false defamatory statement. Just as she tried, unsuccessfully, to shield herself from responsibility for her scurrilous accusations in her March video by couching her accusations in the form of an opinion, or reputation, Ms. Donovan has couched her defamatory statement in this video by making it in the form of a

12

question.  Ms. Donovan cannot hide behind a defamatory accusation by attempting to couch it in the form of a question.

57.    The clear meaning as to this statement is that Mrs. Rachmuth is providing sexual favors for donations or support for EFA's positions.  These allegations are false and extremely damaging to Mrs. Rachmuth and EFA.  It is clear to the reader the implication Ms. Donovan is making here, so this defamatory statement is slander *per se*.  The meaning is all the more clear when taking into consideration other publications Ms. Donovan made during the same timeframe, see above and below, so this statement is also slander *per quod*.

58.    At the time Ms. Donovan made the defamatory statements in this April 2023 video she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

59.    In or about May 2023, Ms. Donovan published a video about Mrs. Rachmuth on her public Facebook page.  During the video, Ms. Donovan made the following statements about Mrs. Rachmuth:

> I don't know there's other rumors going around about why people don't want their name associated with Sloan Rachmuth.  There might be some affairs.  I'm just saying what Ben told me, I can't tell you if that's true or not, but there are people who are scared.
>
> And so they have to obey her, right?  And if you go and you look on her Twitter account today, she's got an article there by the Daily Haymaker.  Now,  I'm not sure if they're having an affair.  If he has a crush on her, or if she's getting paid . .
>
> (Defamatory Publication No. 6).

60.    The statement, "I don't know there's other rumors going around about why people don't want their name associated with Sloan Rachmuth" is false and defamatory.  This defamatory statement is slander *per se*. This was a categorically false defamatory statement.  There were no

"rumors going around" about why people didn't want their names associated with Sloan Rachmuth.

61.     Further, the statement "there might be some affairs" is categorically false and defamatory.  This defamatory statement is slander *per se*.  Just as she tried, unsuccessfully, to shield herself from responsibility for her scurrilous accusations in her March video by couching her accusations in the form of an opinion, or reputation, Ms. Donovan is attempting to do the same here; however, Ms. Donovan cannot hide behind a baseless and false defamatory accusation by attempting to couch it in the form of an opinion, reputation, or question.

62.     The clear meaning as to all of these statements is that Mrs. Rachmuth is having affairs and providing sexual favors for donations or support for EFA's positions.  These allegations are false and extremely damaging to Mrs. Rachmuth and EFA.  It is clear to the listener the implication Ms. Donovan is making here, so this defamatory statement is slander *per se*.  The meaning is all the more clear when taking into consideration other publications Ms. Donovan made during the same timeframe, see above and below, so this statement is also slander *per quod*.

63.     In this statement, Ms. Donovan stated, "I'm just saying what Ben told me."  The "Ben" in this statement is Ben Bergquam, a nationally known conservative journalist/activist/blogger.  So, she is falsely attributing the rumor that Mrs. Rachmuth is having affairs to Ben Bergquam.  It has been confirmed that Ben Bergquam never told Ms. Donovan that Mrs. Rachmuth was having an affair.  Ms. Donovan's false attribution of this accusation to Mr. Bergquam is defamation itself.   The statement "I'm just saying what Ben told me" is false and defamatory.

64.     At the time Ms. Donovan made the defamatory statements in this May 2023 video she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

65. In a May 24, 2023 Tweet, Ms. Donovan stated the following about Mrs. Rachmuth:

It is illegal to do what she is doing.. But her sugar daddies are well connected and literally citizens have their rights trashed by her group who are criminally stalking and harassing many people like an anti-MAGA mafia.

(Defamatory Publication No. 7).

66. In or about June 2023, Ms. Donovan published a video about Mrs. Rachmuth on her public Facebook page. During the video, Ms. Donovan made the following statements about Mrs. Rachmuth:

What is she paid to do? Why do people pay her? I've heard a number of reasons why. Everything from, hey, she's kind of very flirtatious and so she's got some men who give her money.

(Defamatory Publication No. 8).

67. The statement in Publication No. 7 that "her sugar daddies are well connected," and the statement in Publication No. 8, "she's kind of very flirtatious and so she's got some men who give her money" are both false and defamatory. These defamatory statements are defamation per se. These are categorically false defamatory statements. Based on the context of the other statements she has made in this publication like "why do people pay her?" and "I've heard a number of reasons," the clear meaning as to these statements is that Mrs. Rachmuth is providing sexual favors for donations or support for EFA's positions. It is hard to imagine a more damaging accusation. These allegations are false and extremely damaging to Mrs. Rachmuth and EFA. It is clear to the reader the implication Ms. Donovan is making here, so these defamatory statements are libel/slander *per se*. The meaning is all the more clear when taking into consideration other publications Ms. Donovan made during the same timeframe, see above and below, so these statements are also libel/slander *per quod*.

68.     At the time Ms. Donovan made these defamatory statements she either knew that the statements were false or acted with reckless disregard of whether the statements were false. As such, Ms. Donovan published the statements with actual malice.

69.     In or about July 2023, Ms. Donovan published a video about Mrs. Rachmuth on her Facebook page.   During the video, Ms. Donovan made the following statements about Mrs. Rachmuth:

> She's fake.  Her political PACs are fake.  She's a fraud and she's lying most of the time about everything that she says and it's just for clicks and cash.  She and her husband have a history of creating fake companies and making a lot of money . . ."

(Defamatory Publication No. 9).

70.     The statement that Mrs. Rachmuth is "fake" is false and defamatory, the statement "her political PACs are fake" is false and defamatory, the statement "She's a fraud and she's lying most of the time about everything that she says," is false and defamatory, the statement "it's just clicks and cash," is false and defamatory, and the statement "She and her husband have a history of creating fake companies and making a lot of money" is false and defamatory.  These defamatory statements are slander *per se*.

71.     Ms. Donovan's statement that Mrs. Rachmuth and her husband have a history of creating fake companies is extremely concerning in that she is attempting to add credibility to her false accusations that EFA is fake by creating a false narrative that the Rachmuths have been involved in other fake companies.  This false accusation was extremely disparaging and damaging to the Rachmuths and to EFA.

72.     At the time Ms. Donovan made the defamatory statements in this July 2023 video she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Defendants published the statements with actual malice.

73.     It should be noted that in this same video, Ms. Donovan makes the statement, "I'm glad that I've been able to reduce her footprint out there in the world. . . ." So, by this statement, Ms. Donovan is admitting and bragging that her constant, unrelenting, scurrilous, and false smear campaign has damaged Mrs. Rachmuth and EFA's reputation, credibility, and influence.

**C.    False Allegations of Criminal Conduct; and Deliberate Manipulation and Abuse of Criminal Process to Self-Manufacture the False Impression of Criminal Conduct For Support of Her False and Defamatory Public Statements.**

74.     On July 21, 2022, the leader of a Neo-Nazi group that espouses holocaust denial views, Lynn Hoosier, filed a baseless cyberstalking charge and request for a 50C restraining order against Mrs. Rachmuth in Union County.  Upon information and belief, Mr. Hoosier was acting in association and in conjunction with Ms. Donovan.  Mr. Hoosier took out the cyberstalking charge against Mrs. Rachmuth on the basis that Mrs. Rachmuth had sent him a hostile email after he had posted antisemitic propaganda about her online.  Mr. Hoosier's request for a restraining order was denied.  The hearing for the case was conducted on January 17, 2023.  The judge dismissed the charges after Mr. Hoosier testified.  Mrs. Rachmuth never had to testify.  Ms. Donovan was in court for that hearing.  She was a witness to the judge dismissing the case.

75.     Despite the fact that she knew first-hand that the charges had been dismissed, Ms. Donovan continued to make false and defamatory statements that Mrs. Rachmuth still had "criminal charges" against her.

76.     In a March 18, 2023, social media message to an EFA supporter, Ms. Donovan stated, "Why are you hosting a woman with criminal cyberstalking charges, who is under FEC investigation . . . (Defamatory Publication No. 10).

77.     In a May 8, 2023 Tweet. Ms. Donovan stated:

> . . . this lunatic with criminal charges continues to just target one man.  SHE should not be a media princess..  WE should not encourage her behaving

this way when she has criminal cyber stalking charges and a long history of lying..''

(Defamatory Publication No. 11).

78.    In a May 10, 2023 Tweet, Ms. Donovan stated:

More investigation is needed and is ongoing into the corruption by Sloan Rachmuth of Education First Alliance Political PAC.  She is already under investigation for corruption and fraud, she has criminal charges for cyberstalking, she has lied many times to the NC Secretary of State.  She has placed many hoaxes in the media.

(Defamatory Publication No. 12).

79.    In a June 9, 2023 Tweet, Ms. Donovan stated:

Education First Alliance is a Political Pac-under FEC investigation too.. look her up for more fraud and Sloan Rachmuth has criminal charges for cyberstalking (Conservatives by the way).  SPLC got that one right -that one IS a hate group.

(Defamatory Publication No. 13).

80.    The statement in Publication No. 10 that Mrs. Rachmuth has "criminal cyberstalking charges," and the statements in Publication No. 11 that Mrs. Rachmuth is a "lunatic with criminal charges" and that "she has criminal cyber stalking charges and a long history of lying" are all false and defamatory.  The statement in Publication No. 12 that Mrs. Rachmuth "has criminal charges for cyberstalking" is false and defamatory.  The statement in Publication No. 13 that "Sloan Rachmuth has criminal charges for cyberstalking" is false and defamatory.  All of these defamatory statements are slander *per se.*

81.    Ms. Donovan's above statements are in the present tense.  It is clear that the message Ms. Donovan is conveying is that Mrs. Rachmuth currently has criminal charges of cyberstalking pending against her.  That is absolutely false, and Ms. Donovan knew that was false. She attended the court hearing during which the baseless cyberstalking charges were dismissed. The implications made by Ms. Donovan, over and over, that Mrs. Rachmuth has current criminal

charges pending against her, when they were not, was extremely disparaging and damaging to Mrs. Rachmuth and to EFA.

82.    At the time Ms. Donovan made these above-referenced defamatory Tweets and messages, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

83.    In addition to these defamatory statements constituting slander/libel *per se*, the references to the baseless criminal charges that she or her cohorts instituted are evidence of Ms. Donovan's abuse of the criminal and civil legal process and are evidence of her malicious prosecution.

84.    Upon information and belief, in February 2023, one of Ms. Donovan's associates, under the direction and/or in association with Ms. Donovan, filed a false and baseless complaint with the Federal Election Commission ("FEC")  against EFA alleging various false allegations of fraud and financial improprieties.

85.    Ms. Donovan and her associates' FEC complaint focused on whether Ms. Rachmuth chose the correct corporate structure when establishing EFA – corporation, limited liability company, non-profit corporation, political action committee, or political committee.  It is true that when Mrs. Rachmuth started EFA, she was not properly advised as to the proper legal entity for her organization.  Specifically, she was advised EFA needed to be a PAC when in fact EFA never supported any candidates in any federal election, so EFA never needed to be a PAC. During the time that EFA operated as a PAC, it never supported any candidates in any federal election. EFA only supported candidates in North Carolina elections.  Earlier this year, with new counsel, EFA corrected the entity organization name mix-up.  Regardless, merely using the incorrect corporate structure when forming an entity does not constitute fraud, and it doesn't make

the company fake.  It also most certainly does not constitute evidence of corruption or financial fraud.  Ms. Donovan and her associates were completely aware of this, and they filed their baseless complaint with the FEC anyway to provide false support for her false and defamatory posts on social media.

86.    Upon information and belief, the type of complaint that Ms. Donovan and her associates filed with the FEC is handled in order based on the seriousness of the matter, with the more serious matters being given priority.  It is likely this complaint may be "pending" for an extended period of time.  Ms. Donovan was aware of this when her and her associate filed their complaint.

87.    After this FEC complaint was filed, Ms. Donovan began repeatedly stating in her Tweets and other publications that Mrs. Rachmuth and EFA are under investigation by the FEC.

a.  In a March 29, 2023 Tweet, Ms. Donovan stated, "This is Sloan Rachmuth's Education First Alliance PAC which was reported to the FEC for 9 counts of fraud.  That is something Racmuth (sic) is trying to cover up and why she lies about antisemitism-as an excuse for why people ask her questions." (Defamatory Publication No. 14).

b.  In the March 18, 2023 social media message to an EFA supporter (identified above as Defamatory Publication No. 10), Ms. Donovan stated, "Why are you hosting a woman with criminal cyberstalking charges, who is under FEC investigation . . .

c.  In a May 4, 2023 social media message, Ms. Donovan stated, "She [Sloan] . . . has falsified legal documents, lied to judges, lawyers and police, attacked a child, threatened political candidates and she represents herself as a Non-Profit, which she isn't…she is a political PAC and is under investigation for 9 counts of fraud." (Defamatory Publication No. 15).

d.  In a May 5, 2023 social media message to an EFA supporter, Ms. Donovan stated,

You might want to interview someone with an ounce of credibility Mr. Peters.  Ask about her criminal charges (including FL) and current FEC investigation. . . . Why didn't you tell your audience she's there as the president of an FEC PAC under investigation for falsified campaign finance reports?"

20

(Defamatory Publication No. 16).

e.  In a May 8, 2023 Tweet, Ms. Donovan stated, "It is for her corrupt political PAC which is under FEC investigation." (Defamatory Publication No. 17).

f.  In a June 9, 2023 Tweet (identified above as Publication No. 13), Ms. Donovan stated, "Education First Alliance is a Political Pac-under FEC investigation too..."

g.  In a June 11, 2023 Tweet, Ms. Donovan stated:

> She is a criminal.  She is under FEC investigation, she has attacked a child at a Johnston Co. polling booth for campaigning for her Dad-who was one of Sloan's opponents-and her 'news' stories about our Republicans are always fake.  Please be responsible about promoting her work.

(Defamatory Publication No. 18).

88.     The only complaint that has been submitted with the FEC regarding Mrs. Rachmuth or EFA is the false and baseless complaint that Ms. Donovan's own associate submitted in early February 2023 referenced above.  Ms. Donovan knew at the time the FEC complaint was filed, and she knew at the time that she posted all of these publications, that the complaint filed with the FEC was false and baseless.  Upon information and belief, Ms. Donovan was instrumental in coordinating the filing of this baseless FEC complaint for the sole purpose of being able to further disparage, defame, and slander Ms. Rachmuth in all of her numerous Tweets and social media messages.  All of these statements are libel *per se*.

89.     At the time Ms. Donovan made these above-referenced defamatory statements Tweets and messages, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

90.     In addition to the numerous false and defamatory statements above constituting libel, the references to the baseless FEC investigation are evidence of Ms. Donovan's abuse of the criminal and civil legal process and are evidence of her malicious prosecution.

**D.**     **False Allegations of Death Threats.**

91.     On July 3, 2022, Ms. Donovan announced her candidacy for Wake County school board.  Shortly thereafter, EFA announced their opposition to Ms. Donovan's candidacy.

92.     On July 8, Ms. Donovan dropped out of the Wake County school board race.  Ms. Donovan stated online that death threats made by Mrs. Rachmuth had caused her to drop out of the race.  This was a false and defamatory statement.  Mrs. Rachmuth has never made any death threats to Ms. Donovan.

93.     Ms. Donovan has continued, through 2023, to publish false statements that Mrs. Rachmuth has sent death threats.  On numerous occasions in her countless Tweets and messages obsessively focused on disparaging Mrs. Rachmuth and ruining her career, Ms. Donovan has falsely accused Mrs. Rachmuth of making death threats.

94.     In a March 23, 2023 Tweet, Ms. Donovan stated:

> Rachmuth assists the #MAGAPurge by terrorizing lawmakers, candidates, lawyers, judges, children.. An entire state of people and she has made a lot of money doing it.

> (Defamatory Publication No. 19).

95.     The statement that Mrs. Rachmuth is "terrorizing lawmakers, candidates, lawyers, judges, children" is false and defamatory.  This statement is libel *per se*.

96.     At the time Ms. Donovan made this defamatory statement she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

97.     In another March 23, 2023 Tweet, Ms. Donovan stated:

Rachmuth worked in partnership with a radical far leftist who made death threats against Moms for Liberty in Wake Co. and hounded Moms for Liberty school board candidates.   All encouraged by the NCGOP. Republicans lost almost all races.  They want to lose, Rachmuth helps GOP lose.

(Defamatory Publication No. 20).

98.     The statement that Mrs. Rachmuth is "in partnership with a radical far leftist" is false and defamatory, the clear implication that Mrs. Rachmuth is worked in partnership with anyone to make "death threats" is false and defamatory, and the statement that "Rachmuth helps GOP lose" is false and defamatory.  It is clear to the reader the implication Ms. Donovan is making here, so this defamatory statement is libel *per se*.  The meaning of these statements is all the more clear when taking into consideration other posts Ms. Donovan made during the same timeframe, especially with regard to allegation that Mrs. Rachmuth is personally involved in making death threats, so this statement is also libel *per quod*.

99.     At the time Ms. Donovan made these defamatory statements, she either knew that the statements were false or acted with reckless disregard of whether the statements were false. As such, Ms. Donovan published the statements with actual malice.

100.    In a March 29, 2023 Tweet, Ms. Donovan stated:

I exposed her as a fraud two years ago, and she caused me to lose a great writing gig-with threats to the platform, tried to have me arrested and filed fake sexual harassment charges against me.. and MORE..she harassed my campaign staff with death threats and threats of doing the same to them she did to me.."

(Defamatory Publication No. 21).

101.    The "she" in this Tweet is Mrs. Rachmuth and was understood as such by the readers.  The statement that Mrs. Rachmuth "filed fake sexual harassment charges against me" is a total fabrication, is false, and is defamatory. (Discussed in more detail, below).  The statement

that Mrs. Rachmuth "harassed my campaign staff with death threats" is a total fabrication, is false, and is defamatory. These statements are libel *per se*.

102.    At the time Ms. Donovan made the defamatory statements in this Tweet she either knew that the statements were false or acted with reckless disregard of whether the statements were false. As such, Ms. Donovan published the statements with actual malice.

103.    In a May 24, 2023 Tweet, Ms. Donovan stated:

> Rachmuth is trying to stop the general assembly Republicans and she is interfering with their work and with elections as well because she is publishing media hoaxes to frame people outrageous lies that don't represent them. She threatens people with stalking, death threats and smear media.

> (Defamatory Publication No. 22).

104.    While Mrs. Rachmuth has threatened Ms. Donovan that she would take out stalking charges against her, Mrs. Rachmuth has never made any death threats to anyone. The statement that Mrs. Rachmuth "threatens people with . . . death threats" is false and is defamatory. The statement that Mrs. Rachmuth publishes "media hoaxes to frame people" is also a total fabrication, false, and defamatory. These statements are libel *per se*.

105.    At the time Ms. Donovan made the defamatory statements in this Tweet she either knew that the statements were false or acted with reckless disregard of whether the statements were false. As such, Ms. Donovan published the statements with actual malice.

106.    In a video published on her public Facebook page in April 2023, Ms. Donovan made the following statement about Mrs. Rachmuth:

> And I made her commit so many crimes that she can never really do anything to me without me bringing up all of the crimes that she committed. When she crashed my campaign staff and sent death threats and made stalking videos and freaked out and demanded I show up with her online on her videos after crying to judges magistrates and DA's that I was trying to harm her.

(Defamatory Publication No. 23).

107.    The statement, "When she crashed my campaign staff and sent death threats and made stalking videos" is a false and defamatory statement.  Mrs. Rachmuth has never made any death threats to anyone.  This statement is slander *per se*.

108.    The statement "I made her commit so many crimes" is a false and defamatory statement.  Mrs. Rachmuth has not committed any crimes during their interactions, or at any other time during the two years that they have known each other.  This is slander *per se*.

109.    The statement "she can never really do anything to me without me bringing up all of the crimes that she committed," is a false and defamatory statement. It again clearly implies Mrs. Rachmuth has committed multiple crimes, which is not true.[3]

110.    At the time Ms. Donovan made the defamatory statements in this video she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

E.    **False Allegations of Physical Assault and Physical Attack.**

111.    During early voting leading up to the 2022 election, Mrs. Rachmuth was working a voting site, campaigning for the candidates that EFA was supporting, when the teenaged daughter of Steven Walker, who was running for Superior Court Judge, approached Mrs. Rachmuth and loudly chided her for "lying" about her father.  Mrs. Rachmuth told her that she was surprised that she spoke to adults that way, and the girl then said, "all teenagers behaved this way."  Mrs. Rachmuth responded, "not if they're raised right."

---

[3] This tweet also evidences Ms. Donovan's clear intent was to try to instigate or bait Mrs. Rachmuth into committing crimes so that she could then smear Mrs. Rachmuth on social media about them.

112.     While Mrs. Rachmuth could have probably used better restraint by not responding to Mr. Walker's daughter, she most definitely did not assault or attack the girl, and she never touched or even came close to touching her.  There was never a physical assault or attack, and no witnesses to the incident have ever described a physical assault or attack.

113.     Nevertheless, in a November 17, 2022 Tweet, Ms. Donovan posted a message clearly directly concerning Mrs. Rachmuth, stating:

> There is a long string of her abusing people physically, stalking people physically and online, and causing problems for real activists groups with manipulations and lies.  Then there is financial fraud… and fake news smears.

> (Defamatory Publication No. 24).

114.     This statement is directly concerning Mrs. Rachmuth.  The "her" in the statement is Mrs. Rachmuth.  Everyone reading the Tweet knew and understood this Tweet being about Mrs. Rachmuth.  The statement that "there is a long string of her abusing people physically, stalking people physically" is a false and defamatory statement.  During the entire time that EFA has been in existence, Mrs. Rachmuth has never physically abused or stalked anyone.  This statement is libel *per se*.

115.     At the time Ms. Donovan published this defamatory statement and the other defamatory statements in the social media message above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

116.     In a video published on her public Facebook page in or about December 2022, Ms. Donovan made the following statement about Mrs. Rachmuth:

> Sloan has a get out of jail free card she has a bully harass threaten people drag him through the court law fair use whatever you want and literally physically attack a child get out of jail free card she can do whatever she

wants to do because she is in a democrat we are very blue state now and they don't care.

(Defamatory Publication No. 25).

117.    The statement that Mrs. Rachmuth "literally physically attack a child" is a false and defamatory statement.  Mrs. Rachmuth never physically attacked Mr. Walker's daughter.  She has never physically attacked any child.  This statement is slander *per se*.

118.    At the time Ms. Donovan made this defamatory statement and the other defamatory statements in the video clip above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

119.    In a March 15, 2023 Tweet, Ms. Donovan posted a message in direct response to a message posted by Mrs. Rachmuth, stating:

> This president of a disastrous Political PAC-who pushes fake news smears at a national level-and reports parents as security threats-beats the drum constantly against Republicans even physically assaulting them and their families.  She targeted only Republicans in Nov. 2022.

(Defamatory Publication No. 26).

120.    The "she" is Mrs. Rachmuth.  The statement that Mrs. Rachmuth "physically assaulting them [Republicans] and their families" directly refers to Mrs. Rachmuth and is a false and defamatory statement.  During the entire time that EFA has been in existence, Mrs. Rachmuth has never physically assaulted any Republican or any member of a Republican's family.  She has never physically assaulted anyone during this time.  This statement is libel *per se*.  Other statements in the publication are false and defamatory.

121.    At the time Ms. Donovan published this defamatory statement and the other defamatory statements in the social media message above, she either knew that the statements were

false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

122.    In a May 6, 2023 Tweet, Ms. Donovan posted a message clearly directly concerning Mrs. Rachmuth and EFA, stating:

> She has many fake nonprofits and her LLC-who was paid by her Political Pac was dissolved for failing to file financials.  She is a total con-and she grooms children to be cons like herself-if she isn't physically attacking them, that is.  THAT is your media sweetheart.

(Defamatory Publication No. 27).

123.    This statement is directly concerning Mrs. Rachmuth and EFA.  The "she" in the statement is Mrs. Rachmuth.  Everyone reading the Tweet knew and understood this Tweet being about Mrs. Rachmuth.  The statement that "she is a total con-and she grooms children to be cons like herself-if she isn't physically attacking them, that is" is a false and defamatory statement.  This is a direct reference to the incident with Steven Walker's daughter.  Everyone reading this Tweet understood that statement to be concerning the incident with Steven Walker's daughter. As stated before, Mrs. Rachmuth did not physically attack Steven Walker's daughter.  During the entire time that EFA has been in existence, Mrs. Rachmuth has never physically attacked anyone.  This statement is libel *per se*.  Other statements in this publication are false and defamatory.

124.    At the time Ms. Donovan published this defamatory statement and the other defamatory statements in the social media message above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Defendants published the statements with actual malice.

125.    In an early 2023 video published on her public Facebook page, Ms. Donovan made the following statements directly about Mrs. Rachmuth:

> So anyway . . . She's literally attacked children in public and had to be pulled off of a girl, my lawyer's daughter, while she was campaigning for her dad.

(Defamatory Publication No. 28).

126.    The statement that she "literally attacked children in public and had to be pulled off of a girl" is a false and defamatory statement.  The statement that she "had to be pulled off" of the girl is certainly an implication that the attack was physical.  As stated before, Mrs. Rachmuth did not physically attack or assault Steven Walker's daughter.  During the entire time that EFA has been in existence, Mrs. Rachmuth has never physically attacked anyone. This statement is slander *per se*. Other statements in this publication are false and defamatory.

127.    At the time Ms. Donovan published this defamatory statement and the other defamatory statements in the video referenced above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

**F.    False Allegations About Being Escorted Out of the General Assembly, Ghostwriting, and Lying about Education Credentials.**

128.    In a September 18, 2022 Tweet, Ms. Donovan stated the following about Mrs. Rachmuth and EFA:

> Sloan has ghost writers for the few sprinkled articles around the internet-which cost her funders good money to place, I am sure.

> She is a filthy pit bull who gets paid to be her crazy self and scare decent Americans from partaking in civics-that's what she does.

(Defamatory Publication No. 29).

129.    The statement that "Sloan has ghost writers for the few sprinkled articles around the internet" is false and defamatory. The phrase "using ghost writers" implies that she is taking

credit for articles written by someone else.  She has never used ghost writers.  This statement is libel *per se*.

130.    At the time Ms. Donovan published this defamatory statement and the other defamatory statements in the message referenced above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

131.    In response to a post by Mrs. Rachmuth, in a March 16, 2023 Tweet, Ms. Donovan stated the following about Mrs. Rachmuth:

> I am surprised law enforcement allows her into the GA building after she had to be escorted out last year when she attacked another representative. She is stalking more people to their work places..and bragging about it . . . She has also attacked children. . . . She is dangerous and has criminal cyber stalking charges.  Get a restraining order!

(Defamatory Publication No. 30).

132.    The statement that Mrs. Rachmuth is "had to be escorted out" of the General Assembly building is false and defamatory.  Mrs. Rachmuth has never been escorted out of the General Assembly building. The statement that she "attacked another representative" is false and defamatory.  She has never attacked a representative.  The statement that she is "stalking more people to their work places" is false and defamatory.  The statement that "she has attacked children" is false and defamatory.   These statements are libel *per se*.  Other statements in this publication are false and defamatory.

133.    At the time Ms. Donovan published these defamatory statements and the other defamatory statements in the message referenced above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

134.    In a video Ms. Donovan published on her public Facebook page in or about June 2023, Ms. Donovan made the following statements about Mrs. Rachmuth:

> She stalks people.  She makes people feel very uncomfortable who are in her presence.
>
> And they've reported that she's been removed from the General Assembly for threatening people.  She has criminal charges.  She's under FEC investigation.  She lies constantly.  She has a history and a lot of problems.
>
> (Defamatory Publication No. 31).

135.    The statement that someone has "reported that she's been removed from the General Assembly for threatening people," is false and defamatory.  This statement and the other statements referenced above are slander *per se*.

136.    At the time Ms. Donovan published these defamatory statements and the other defamatory statements in the video referenced above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Defendants published the statements with actual malice.

137.    In another March 16, 2023 Tweet, Ms. Donovan stated the following about Mrs. Rachmuth:

> Per usual.. Everything about her is a lie.  They are all fake!!
>
> I do know she used a ghost writer.
>
> To open doors for herself she has impressed people with experience, degrees and bonafides that she made up like these links.
>
> (Defamatory Publication No. 32).

138.    The statement that Mrs. Rachmuth "used a ghost writer" is false and defamatory. The phrase using ghost writers implies that she is taking credit for articles written by someone else, which she has never done. The statement that she "has impressed people with . . . degrees . .

. that she made up" is false and defamatory.  She has never used ghost writers and has never made-up degrees.  These statements are libel *per se*.

139.   At the time Ms. Donovan published these defamatory statements and the other defamatory statements in the message referenced above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

140.   In a March 29, 2023 Tweet, Ms. Donovan stated the following about Mrs. Rachmuth:

> There is no way Sloan Rachmuth wrote this.. As she uses ghost writers.. But interesting that the article highlights two leading #NCGA members she trashes as a "media personality" who the author of the article elevates… While she chooses hot topics to talk about…she is a con and fraud.
>
> (Defamatory Publication No. 33).

141.   The statement that "There is no way Sloan Rachmuth wrote this.. As she uses ghost writers" is false and defamatory.  She has never used ghost writers.  This statement is libel *per se*.

142.   At the time Ms. Donovan published this defamatory statement and the other defamatory statements in the message referenced above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

143.   In an April 2023 video published on her public Facebook page, Ms. Donovan made the following statements about Mrs. Rachmuth:

> Sloan Rachmouth (sic) is also targeting the John Locke Foundation.  I hear it's because they didn't want to hire her as a writer.  She's a terrible writer, by the way, and she uses ghost writers and she exposed that she lies about who she's had by lines for.  She says she's had a byline with the Federalists, for example.  In six years, there were three articles and two of them were written by ghost writers.  Okay, so apparently she went to John Locke.  She wanted to get a job.  They said no, she made up a story about how they said, yeah, man, like, hey, we want to get some of that due money, man.  The

way that she was saying the story is like okay, look, that doesn't actually happen.

(Defamatory Publication No. 34).

144. The statement that Mrs. Rachmuth "uses ghost writers" is false and defamatory, and the statement that Mrs. Rachmuth had "three articles and two of them were written by ghost writers" is false and defamatory. The phrase using ghost writers implies that she is taking credit for articles written by someone else. Mrs. Rachmuth has never used ghost writers and has never printed an article written by someone else without giving proper credit. These statements are slander *per se*.

145. The statements in this video publication that Mrs. Rachmuth had unsuccessfully attempted to get a job at the John Locke Foundation are also false and defamatory. Mrs. Rachmuth has never attempted to get a job at the John Locke Foundation, much less get turned down from trying to get a job at the John Locke Foundation. These statements are slander *per se*.

146. At the time Ms. Donovan published these defamatory statements and the other defamatory statements in the video referenced above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false. As such, Defendants published the statements with actual malice.

147. Mrs. Rachmuth has a bachelor's degree in psychology from Harvard University in the extension division. She completed numerous courses in Media Psychology where she was admitted to obtain a PhD in Media Psychology, but she did not complete all courses to obtain the Phd. She has a certificate in legal studies, but she is not a lawyer and has never represented she is a lawyer. She has never misrepresented her educational credentials.

148. Nevertheless, in a November 27, 2022 Tweet, Ms. Donovan stated the following about Mrs. Rachmuth:

> When I asked her where she got them from - a Harvard Educated
> Psychologist and Lawyer with PhD in media . . .  (uh huh) she threaten to
> have me arrested for antisemitism.

(Defamatory Publication No. 35).

149.    The statement that Mrs. Rachmuth claims to be "a Harvard Educated Psychologist

and Lawyer with PhD in media" is an implication that Mrs. Rachmuth has been lying about her

educational credentials.  This statement falsely attributes a statement to Mrs. Rachmuth that she at

some point had claimed she had these particular degrees, when in fact Mrs. Rachmuth has never

made such claims.  The statement paints Mrs. Rachmuth in a negative light in that if Mrs.

Rachmuth had actually made these claims, they could easily be proven as not true.  This statement

was not intended, and was not understood by any of the readers, to be complimentary.  Based on

other posts being made by Ms. Donovan around the same time, the defamatory implication in this

Tweet is clear.  The implication being made by this Tweet is false and defamatory.

150.    This statement is libel *per quod*.

151.    At the time Ms. Donovan published this defamatory statement and the other

defamatory statements in the Tweet referenced above, she either knew that the statements were

false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan

published the statements with actual malice.

152.    In a March 13, 2023 Tweet, Ms. Donovan stated the following about Mrs.

Rachmuth:

> She must have been some prodigy to accomplish multiple degrees from
> Harvard after not completing high school. . .

(Defamatory Publication No. 36).

153.    The statement "She must have been some prodigy to accomplish multiple degrees

from Harvard" is a defamatory implication that Mrs. Rachmuth has been lying about her

educational credentials.  This statement was not intended, and was not understood by any of the readers, to be complimentary.  Based on other posts being made by Ms. Donovan around the same time, the defamatory implication in this Tweet is clear.  The implication being made by this Tweet is false and defamatory.  This statement is libel *per quod*.

154.    At the time Ms. Donovan published this defamatory statement and the other defamatory statements in the Tweet referenced above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

155.    In an April 17, 2023 Tweet, Ms. Donovan stated the following about Mrs. Rachmuth:

> A high school dropout with 7 advanced degrees from Harvard and you 1) don't understand the basics of religion-that is astounding and 2) can't do the basic research that a 10-year-old can do to look something up?  And you want to be considered a top scholar on important issues?
>
> (Defamatory Publication No. 37).

156.    The statement "a high school dropout with 7 advanced degrees from Harvard" is an implication that Mrs. Rachmuth has been lying about her educational credentials.  This statement was not intended, and was not understood by any of the readers, to be complimentary.  Based on other posts being made by Ms. Donovan around the same time, the defamatory implication in this Tweet is clear.  The implication being made by this Tweet is false and defamatory.  This statement is libel *per quod*.

157.    At the time Ms. Donovan published this defamatory statement and the other defamatory statements in the Tweet referenced above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

158.    In a May 2023 video Ms. Donovan published on her public Facebook page, Ms. Donovan stated the following about Mrs. Rachmuth:

> Now Sloan claims that she has a doctorate in media psychology that should go huh psychops okay propaganda I don't think she's very good at it she claims to have gotten a many degrees from Harvard not very well educated I don't think she really even wrote this because she also does use ghost writers but she's put her name on this . . .

(Defamatory Publication No. 38).

159.    The statement that "Sloan claims that she has a doctorate in media psychology" is an implication that Mrs. Rachmuth has been lying about her educational credentials.  This statement falsely attributes a statement to Mrs. Rachmuth that she at some point had claimed she had these particular degrees, when in fact Mrs. Rachmuth has never made such claims.  The statement paints Mrs. Rachmuth in a negative light in that if Mrs. Rachmuth had actually made these claims, they could easily be proven as not true.  This statement was not intended, and was not understood by any of the readers, to be complimentary.  Based on other posts being made by Ms. Donovan around the same time, the defamatory implication in this Tweet is clear.  The implication being made by this Tweet is false and defamatory.  This statement is slander *per quod*.

160.    The statement "she also does use ghost writers" is false and defamatory.  Mrs. Rachmuth has never used ghost writers.  This statement is slander *per se*.

161.    At the time Ms. Donovan published these defamatory statements and the other defamatory statements in the video referenced above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

162.    In a May 5, 2023 Tweet, which was in response to a post by Mrs. Rachmuth, Ms. Donovan stated the following about Mrs. Rachmuth:

This "journalist" who always threatens lawsuits who claims numerous law and medical degrees from Harvard-and is a top expert on education and psychology wrote this while claiming NC med schools are mutilating and sterilizing 2-6 year olds in North Carolina.  Umm . . Anyone brave enough to tell her?

(Defamatory Publication No. 39).

163.    The statement that Mrs. Rachmuth "claims numerous law and medical degrees from Harvard" is an implication that Mrs. Rachmuth has been lying about her educational credentials. This statement falsely attributes a statement to Mrs. Rachmuth that she at some point had claimed she had these particular degrees, when in fact Mrs. Rachmuth has never made such claims.  The statement paints Mrs. Rachmuth in a negative light in that if Mrs. Rachmuth had actually made these claims, they could easily be proven as not true.  This statement was not intended, and was not understood by any of the readers, to be complimentary.  Based on other posts being made by Ms. Donovan around the same time, the defamatory implication in this Tweet is clear.  The implication being made by this Tweet is false and defamatory.  This statement is libel *per quod*.

164.    At the time Ms. Donovan published this defamatory statement and the other defamatory statements in the Tweet referenced above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

165.    In a May 5, 2023 Tweet, Ms. Donovan stated the following about Mrs. Rachmuth:

Oops it is unbelievable!  It is very obvious Rachmuth who claims to have many medical and legal degrees from Harvard has never seen a legal or a medical intake sheet.  It says surgery for 18 and up . . And also family practice.

(Defamatory Publication No. 40).

166.    The statement that Mrs. Rachmuth "claims to have many medical and legal degrees from Harvard" is an implication that Mrs. Rachmuth has been lying about her educational

credentials. This statement falsely attributes a statement to Mrs. Rachmuth that she at some point had claimed she had these particular degrees, when in fact Mrs. Rachmuth has never made such claims. The statement paints Mrs. Rachmuth in a negative light in that if Mrs. Rachmuth had actually made these claims, they could easily be proven as not true. This statement was not intended, and was not understood by any of the readers, to be complimentary. Based on other posts being made by Ms. Donovan around the same time, the defamatory implication in this Tweet is clear. The implication being made by this Tweet is false and defamatory. This statement is libel *per quod*.

167.    At the time Ms. Donovan published this defamatory statement and the other defamatory statements in the Tweet referenced above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false. As such, Ms. Donovan published the statements with actual malice.

168.    In a May 17, 2023 Tweet, Ms. Donovan stated the following about Mrs. Rachmuth:

> Sloan Rachmuth tries to validate her faulty research by citing her own faulty research. This top Harvard educated Journalist-who says she has a Harvard Law degree and a Harvard psychology degree…AND a PHD in media (after dropping out of high school) is not quite clear on…

> (Defamatory Publication No. 41).

169.    The statement that Mrs. Rachmuth "says she has a Harvard Law degree and a Harvard psychology degree…AND a PHD in media (after dropping out of high school)" is false and defamatory. This statement falsely attributes a statement to Mrs. Rachmuth about her educational credentials that she did not make. The statement paints Mrs. Rachmuth in a negative light in that if Mrs. Rachmuth had actually made this statement, it could easily be proven as not true. This statement is libel *per quod*.

170.    At the time Ms. Donovan published this defamatory statement and the other defamatory statements in the Tweet referenced above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

171.    In a June 26, 2023 Tweet, in a response to a post made by Mrs. Rachmuth, Ms. Donovan stated the following about Mrs. Rachmuth:

> This woman with many **degrees** from 'Harvard' and a PhD in media. . .
>
> (Defamatory Publication No. 42).

172.    This statement is an implication that Mrs. Rachmuth has been lying about her educational credentials.  This statement was not intended, and was not understood by any of the readers, to be complimentary.  Based on other posts being made by Ms. Donovan around the same time, the defamatory implication in this Tweet is clear.  The implication being made by this Tweet is false and defamatory.  This statement is libel *per quod*.

173.    At the time Ms. Donovan published this defamatory statement and the other defamatory statements in the Tweet referenced above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

## G.    <u>False Allegations of Manipulating Source Material and Filing Sexual Harassment Charges.</u>

174.    In or around July 2022, Mrs. Rachmuth published a social media post regarding treatment of transgender children that contained slides she obtained off the internet.  These slides were open source and available to the public.  They had been generated by the North Carolina Department of Public Instruction.  Mrs. Rachmuth added her comments either above the slides, or in subsequent slide, but she did not alter or manipulate the slides in any way.  In her post, Mrs.

Rachmuth provided downloads of the full presentations so the reader could look at the source of each one.

175.    Nevertheless, in a November 27, 2022 Tweet, Ms. Donovan included a copy of the above-referenced post by Mrs. Rachmuth, and stated the following:

> This article is based on slides that Jennifer Sloan Rachmuth faked.  I researched them and have confirmation they are fake.
>
> She lies a lot.  She makes stuff up to smear people.  She lies in her work constantly.
>
> (Defamatory Publication No. 43).

176.    The statement "this article is based on slides that Jennifer Sloan Rachmuth faked" is false and defamatory.  The statement "I researched them and have confirmed they are fake," is a complete fabrication, is false, and is defamatory.  The slides are real and have not been manipulated in any way.  These statements are libel *per se*.

177.    At the time Ms. Donovan published this defamatory statement and the other defamatory statements in the Tweet referenced above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

178.    In a March 2023 video published on her public Facebook page, Ms. Donovan made the following statements about Mrs. Rachmuth and the same slides referenced above:

> By the way, I exposed that she had literally created slides and planted them so that she could, oh look, cite them from here.  She's the one that put them there.  She's the one that made them.  Then she puts them on a site, then she picks them up and puts them in an article.
>
> (Defamatory Publication No. 44).

179.    This statement is false and defamatory.  Mrs. Rachmuth did not create the referenced slides and then in some way misrepresent or manipulate the source of the slides.  These statements are slander *per se*.

180.    At the time Ms. Donovan published these defamatory statements and the other defamatory statements in the video referenced above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Defendants published the statements with actual malice.

181.    In another March 2023 video published on her public Facebook page, Ms. Donovan made the following statements about Mrs. Rachmuth and the same slides referenced above:

> I asked Rachmuth for a confirmation of where she got her research *(for the slides)*.  She instead threatened me, threatened to file sexual harassment charges on me, threatened harassment and called me a racist.
>
> She never answered, "where did you get this slide from?"
>
> . . .
>
> So, my question is, perhaps Rachmuth created the slides and then uploaded them to this open source site and then claimed that they were official.
>
> (Defamatory Publication No. 45).

182.    These statements are fabricated, false, and defamatory.  Mrs. Rachmuth did not create the referenced slides, Ms. Donovan never asked Mrs. Rachmuth for a confirmation of where she got her research, and Mrs. Rachmuth never threatened to file sexual harassment charges against Ms. Donovan.

183.    Based on other posts and comments in videos and Tweets being made by Ms. Donovan around the same time, the defamatory implication in this video statement is clear.  Ms. Donovan is attempting to bolster her defamatory statement that Mrs. Rachmuth has falsified her research with the fabricated statement that she directly asked Mrs. Rachmuth to verify her sources,

when Ms. Donovan in fact never did that. These statements are slander *per se* and, based on the content of other related posts, also slander *per quod*.

184.    At the time Ms. Donovan published these defamatory statements and the other defamatory statements in the video referenced above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Defendants published the statements with actual malice.

185.    As she did in this video, Ms. Donovan has repeatedly falsely stated that Mrs. Rachmuth filed sexual harassment charges against her.  This is false, and Ms. Donovan knows this is false.  Ms. Rachmuth filed a request for a 50-C restraining order against Ms. Donovan.  The complaint for a 50-C restraining order filed by Mrs. Rachmuth was for stalking.  Mrs. Rachmuth did not mention anything about sexual harassment in her complaint.   Ms. Rachmuth did not mention anything about sexual harassment in any of the forms or at the hearing regarding this matter.   Ms. Rachmuth's request for a 50-C restraining order was not a charge of sexual harassment, and Ms. Donovan knows this.

186.    Ms. Donovan repeated this same false allegation that Ms. Rachmuth had filed sexual harassment charge in the March 29, 2023 Tweet previously identified as Defamatory Publication No. 21. (See Paragraphs 100-102, supra).

187.    In a June 2023 video published on her public Facebook page, Ms. Donovan made the following statements about Mrs. Rachmuth:

> She told a judge that I was in love with her.  She filed sexual harassment charges against me.

> (Defamatory Publication No. 46).

188.    This statement is false, and defamatory.  Mrs. Rachmuth did not tell a judge that Ms. Donovan was in love with her, and she did not file sexual harassment charges against Ms.

Donovan.  No sexual harassment ever occurred, so the false statement that Mrs. Rachmuth filed sexual harassment charges against her, is directly implying Mrs. Rachmuth has filed a false police report or false court pleading, which is not true, and is defamatory.  These statements are slander *per quod*.

189.    At the time Ms. Donovan published this defamatory statement and the other defamatory statements in the video referenced above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Defendants published the statements with actual malice.

190.    In a July 2023 video published on her public Facebook page, Ms. Donovan made the following statements about Mrs. Rachmuth:

> What did she do? She filed fake sexual harassment charges Imagine that! She goes and gets a magistrate to say that because she's Jewish I'm imagine that she goes and gets a magistrate to say that because she's Jewish, I'm sexually harassing her.

(Defamatory Publication No. 47).

191.    This statement is false, and defamatory.  Mrs. Rachmuth did not file any sexual harassment charges against her, much less **fake** sexual harassment charges, and she did not tell a magistrate that because she is Jewish, Ms. Donovan is sexually harassing her. These statements are slander *per se*.

192.    At the time Ms. Donovan published this defamatory statement and the other defamatory statements in the video referenced above, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Defendants published the statements with actual malice.

**H.    Defamatory Direct Correspondence with Legislators and Others.**

193.    On May 31, 2023, Ms. Donovan sent an email directly to Representative George Cleveland, a member of the North Carolina House of Representatives from Onslow County.  In

the email, Ms. Donovan repeated many of the defamatory statements previously referenced herein, including, but not limited to, that Ms. Rachmuth "has a history of financial fraud," that she has "cyberstalking charges in Union County," when she knew they had been dismissed, and that she has a history of "filing many faked police reports," which is false, and that she has "used faked slides" in her research and reporting, which is false.   (Defamatory Publication No. 48).

194.    Defamatory Publication No. 48 is libel *per se*.  At the time Ms. Donovan made the above-referenced defamatory statements in this email to Rep. Cleveland, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Defendant published the statements with actual malice.

195.    Upon information and belief, Ms. Donovan has sent other similar defamatory emails and/or other correspondence to state legislators and others that will be revealed through discovery and/or at trial.

**I.    Most Recent Defamatory Publications.**

196.    Ms. Donovan published four Facebook posts and two videos from August 1 through 5, 2023 that repeated the same defamatory statements as above.

197.    More specifically, on August 4, 2023, Ms. Donovan published two videos. In the first video, Ms. Donovan repeated the allegation that Ms. Rachmuth "has criminal charges on her record from Union County," when she knew that these charges had been dismissed and when she also knew that the charges were completely baseless to begin with.  She adds the charges "haven't been expunged yet as far as I know."  (Defamatory Publication No. 49).

198.    In the second August 4, 2023 video, Ms. Donovan makes the statement, "she's the defendant, meaning she's the one who's got the criminal charges.  Those are on her record now again."  In the same video, Ms. Donovan also states, "she's the one who's chosen to carry these criminal charges on her record.  And it really doesn't look good if anybody looked up and saw

Union County criminal charges, Wake County criminal charges." (Defamatory Publication No. 50).

199.    As detailed above, Ms. Donovan coordinated the referenced criminal charges to be filed against Ms. Rachmuth knowing they were baseless and for the sole purpose so that she could then spread the defamatory narrative that Ms. Rachmuth had criminal charges against her throughout social media, and then Ms. Donovan continued to make that statement even after the charges were dismissed.  (See Defamatory Publication No. 23, Paragraphs 107 – 111, footnote 3, above).

200.    Defamatory Publication Nos. 49 and 50 referenced above are slander *per se.*  At the time Ms. Donovan made these above-referenced defamatory statements, she either knew that the statements were false or acted with reckless disregard of whether the statements were false.  As such, Ms. Donovan published the statements with actual malice.

201.    In addition to these defamatory statements constituting slander, the references to the baseless criminal charges that she or her cohorts instituted are evidence of Ms. Donovan's abuse of the criminal and civil legal process and are evidence of her malicious prosecution.

202.    On August 5, 2023, Ms. Donovan published a Facebook post which repeated the allegation that EFA is "under FEC investigation for Fraud," and EFA has "a long list of fraud in their nonprofits."  (Defamatory Publication No. 51).

203.    Ms. Rachmuth refers to and incorporates herein by reference Paragraph Nos. 85 through 87, above.  The only FEC investigation was instituted by Ms. Rachmuth and/or her cohorts and is without merit.  EFA is not under investigation for Fraud, and there is not a "long list of fraud" in Ms. Rachmuth's nonprofits.  Defamatory Publication No. 51 is false and defamatory, and is libel *per se.*

204.    At the time Ms. Donovan made these defamatory statements, she either knew that the statements were false or acted with reckless disregard of whether the statements were false. As such, Ms. Donovan published the statements with actual malice.

205.    In addition to these defamatory statements constituting libel, the references to the baseless FEC investigation that she or her cohorts instituted are evidence of Ms. Donovan's abuse of the criminal and civil legal process and are evidence of her malicious prosecution.

206.    Additional defamatory publications will be revealed through discovery and established at trial.

**Damages**

207.    Mrs. Rachmuth has suffered significant distress, embarrassment, injury to moral character, and injury to reputation as a result of Defendant's libel, slander, and other wrongful actions.  Mrs. Rachmuth is entitled to an award of all damages presumed by law to have been suffered by such defamatory actions in an amount to be determined by the trier of fact.  Mrs. Rachmuth has suffered other actual damages, including monetary damages, as a result of Defendant's libel, slander, and other wrongful actions, including but not limited to loss of income.

208.    All of the defamatory and wrongful actions of Defendant set forth herein directly impacted and damaged EFA.  Mrs. Rachmuth is the President and Manager of EFA.  She is the face of EFA.  A defamatory action directed to Mrs. Rachmuth and that impacted Mrs. Rachmuth's work and her employment, also directly impacted and damaged EFA in the same way.  EFA has suffered presumed and actual damages, including loss of income and other monetary damages, as a direct result of Defendant's defamatory actions, and other wrongful conduct.

209.    As Defendant's actions were committed intentionally, with a reckless disregard for Mrs. Rachmuth's rights, and with actual malice, all as more specifically set forth in paragraphs 8

through 206, above, Mrs. Rachmuth and EFA are entitled to an award of punitive damages as
allowed by law to deter Defendant from committing this type of conduct again in the future.

### FIRST CLAIM FOR RELIEF
**(Libel *Per Se*)**

210.     Plaintiffs incorporate herein by reference paragraphs 1 through 209 of this
Complaint as if fully set forth herein.

211.     Defendant wrote, printed, caused to print, and possessed in printed form the Tweets,
social media messages, and other written statements contained in Defamatory Publication Nos. 1,
2, 3, 7, 14-19, 21, 22, 24, 26, 27, 29, 30, 32, 33, 43, 48, and 51 referenced herein.

212.     Defendant published Defamatory Publication Nos. 1, 2, 3, 7, 14-19, 21, 22, 24, 26,
27, 29, 30, 32, 33, 43, 48, and 51.

213.     Statements in Defamatory Publication Nos. 1, 2, 3, 7, 14-19, 21, 22, 24, 26, 27, 29,
30, 32, 33, 43, 48, and 51 as described herein, were false.

214.     Statements in Defamatory Publication Nos. 1, 2, 3, 7, 14-19, 21, 22, 24, 26, 27, 29,
30, 32, 33, 43, 48, and 51 were defamatory.

215.     Statements in Defamatory Publication Nos. 1, 2, 3, 7, 14-19, 21, 22, 24, 26, 27, 29,
30, 32, 33, 43, 48, and 51 falsely accused Mrs. Rachmuth of crimes and impeached Mrs. Rachmuth
and EFA in their trade and profession.

216.     At the time of the publication of Defamatory Publication Nos. 1, 2, 3, 7, 14-19, 21,
22, 24, 26, 27, 29, 30, 32, 33, 43, 48, and 51, Defendant either knew the statements in Defamatory
Publication Nos. 1, 2, 3, 7, 14-19, 21, 22, 24, 26, 27, 29, 30, 32, 33, 43, 48, and 51 were false or
failed to exercise ordinary care in order to determine whether the statements were false.

217.     Additionally, at the time of the publication of the Defamatory Publication Nos. 1,
2, 3, 7, 14-19, 21, 22, 24, 26, 27, 29, 30, 32, 33, 43, 48, and 51, Defendant either knew that the

statements in Defamatory Publication Nos. 1, 2, 3, 7, 14-19, 21, 22, 24, 26, 27, 29, 30, 32, 33, 43, 48, and 51 as referenced herein, were false or acted with reckless disregard of whether the statements were false.  As such, Defendant published the statements with actual malice.

218.    The false, defamatory statements contained in Defamatory Publication Nos. 1, 2, 3, 7, 14-19, 21, 22, 24, 26, 27, 29, 30, 32, 33, 43, 48, and 51 were of and concerning Mrs. Rachmuth and EFA, as described herein.

219.    The words published by Defendant by means of Defamatory Publication Nos. 1, 2, 3, 7, 14-19, 21, 22, 24, 26, 27, 29, 30, 32, 33, 43, 48, and 51 defamed and libeled Mrs. Rachmuth and EFA.

220.    Mrs. Rachmuth and EFA have suffered presumed and actual damages, including but not limited to actual monetary damages in the form of lost earnings and lost revenue, in excess of Twenty-Five Thousand Dollars ($25,000.00), proximately caused by Defendant, as a result of her defamation of Mrs. Rachmuth and EFA, in a specific amount to be proven during the trial of this matter.

221.    Mrs. Rachmuth and EFA are entitled to punitive damages as more specifically set forth above as allowed by law.

## SECOND CLAIM FOR RELIEF
### (Libel *Per Quod*)

222.    Plaintiffs incorporate herein by reference paragraphs 1 through 221 of this Complaint as if fully set forth herein.

223.    Defendant wrote, printed, caused to print, and possessed in printed form the Defamatory Publication Nos. 1, 2, 3, 7, 20, 35, 36, 37, 40, 41, and 42.

224.    Defendant published Defamatory Publication Nos. 1, 2, 3, 7, 20, 35, 36, 37, 40, 41, and 42.

225.     Statements in Defamatory Publication Nos. 1, 2, 3, 7, 20, 35, 36, 37, 40, 41, and 42 as described herein, were false.

226.     Statements in Defamatory Publication Nos. 1, 2, 3, 7, 20, 35, 36, 37, 40, 41, and 42 were defamatory.

227.     Statements in Defamatory Publication Nos. 1, 2, 3, 7, 20, 35, 36, 37, 40, 41, and 42 accused Mrs. Rachmuth of crimes and impeached her and EFA in their trade and profession.

228.     At the time of the publication of Defamatory Publication Nos. 1, 2, 3, 7, 20, 35, 36, 37, 40, 41, and 42, Defendant either knew the statements in Defamatory Publication Nos. 1, 2, 3, 7, 20, 35, 36, 37, 40, 41, and 42 were false or failed to exercise ordinary care in order to determine whether the statements were false.

229.     Additionally, at the time of the publication of Defamatory Publication Nos. 1, 2, 3, 7, 20, 35, 36, 37, 40, 41, and 42 Defendant either knew that the statements in Defamatory Publication Nos. 1, 2, 3, 7, 20, 35, 36, 37, 40, 41, and 42 were false or acted with reckless disregard of whether the statements were false.  As such, Defendant published the statements with actual malice.

230.     The false, defamatory statements contained in Defamatory Publication Nos. 1, 2, 3, 7, 20, 35, 36, 37, 40, 41, and 42 were of and concerning Mrs. Rachmuth and EFA, as described herein.

231.     The words published by Defendant by means of Defamatory Publication Nos. 1, 2, 3, 7, 20, 35, 36, 37, 40, 41, and 42 defamed and libeled Mrs. Rachmuth and EFA.

232.     The false statements are defamatory when considered in connection with innuendo, colloquium, and the circumstances in which they were made, thus constituting libel *per quod.*

233.     Mrs. Rachmuth and EFA have suffered presumed and actual damages, including but not limited to actual monetary damages in the form of lost earnings and lost revenue, in excess

of Twenty-Five Thousand Dollars ($25,000.00), proximately caused by Defendant, as a result of her defamation of them, in a specific amount to be proven during the trial of this matter.

234.    Mrs. Rachmuth and EFA are entitled to punitive damages as more specifically set forth above as allowed by law.

## THIRD CLAIM FOR RELIEF
### (Slander *Per Se*)

235.    Plaintiffs incorporate herein by reference paragraphs 1 through 234 of this Complaint as if fully set forth herein.

236.    Defendant in Defamatory Publication Nos. 4-6, 8-13, 23, 25, 28, 31, 34, 38, 44, 45, 47, 49, and 50 referenced herein, uttered, and caused to be uttered words that were false and defamatory.

237.    Defendant's comments she made in Defamatory Publication Nos. 4-6, 8-13, 23, 25, 28, 31, 34, 38, 44, 45, 47, 49, and 50 as referenced herein, were false and defamatory.

238.    Statements uttered in Defamatory Publication Nos. 4-6, 8-13, 23, 25, 28, 31, 34, 38, 44, 45, 47, 49, and 50 as referenced herein, falsely accused Mrs. Rachmuth of crimes and also impeached Mrs. Rachmuth and EFA in their trade and profession.

239.    At the time of the statements in Defamatory Publication Nos. 4-6, 8-13, 23, 25, 28, 31, 34, 38, 44, 45, 47, 49, and 50 were uttered, Defendant either knew the statements were false or failed to exercise ordinary care in order to determine whether the statements were false.

240.    Additionally, at the time the statements were uttered, Defendant either knew that the statements in Defamatory Publication Nos. 4-6, 8-13, 23, 25, 28, 31, 34, 38, 44, 45, 47, 49, and 50 were false or acted with reckless disregard of whether the statements were false.  As such, Defendant uttered the statements with actual malice.

241.    The false, defamatory statements contained in Defamatory Publication Nos. 4-6, 8-13, 23, 25, 28, 31, 34, 38, 44, 45, 47, 49, and 50 were of and concerning Mrs. Rachmuth and EFA, as described herein.

242.    The words uttered by Defendant by means of Defamatory Publication Nos. 4-6, 8-13, 23, 25, 28, 31, 34, 38, 44, 45, 47, 49, and 50 defamed and slandered Mrs. Rachmuth and EFA.

243.    Mrs. Rachmuth and EFA have suffered presumed and actual damages, including but not limited to actual monetary damages in the form of lost earnings and lost revenue, in excess of Twenty-Five Thousand Dollars ($25,000.00), proximately caused by Defendant, as a result of her defamation of Mrs. Rachmuth and EFA, in a specific amount to be proven during the trial of this matter.

244.    Mrs. Rachmuth and EFA are entitled to punitive damages as more specifically set forth above as allowed by law.

## FOURTH CLAIM FOR RELIEF
### (Slander *Per Quod*)

245.    Plaintiffs incorporate herein by reference paragraphs 1 through 244 of this Complaint as if fully set forth herein.

246.    Defendant in Defamatory Publication Nos. 4-6, 8, 38, 45, and 46 as referenced herein, uttered, and caused to be uttered words that were false and defamatory.

247.    Defendant's comments he made in Defamatory Publication Nos. 4-6, 8, 38, 45, and 46 were false and defamatory.

248.    Statements uttered by Defendant in Defamatory Publication Nos. 4-6, 8, 38, 45, and 46 falsely accused Mrs. Rachmuth of crimes and also impeached Mrs. Rachmuth and EFA in their trade and profession.

249.    At the time the statements in Defamatory Publication Nos. 4-6, 8, 38, 45, and 46 were uttered, Defendant either knew the statements were false or failed to exercise ordinary care in order to determine whether the statements were false.

250.    Additionally, at the time the statements were uttered, Defendant either knew that the statements in Defamatory Publication Nos. 4-6, 8, 38, 45, and 46 were false or acted with reckless disregard of whether the statements were false.  As such, Defendant uttered the statements with actual malice.

251.    The false, defamatory statements contained in Defamatory Publication Nos. 4-6, 8, 38, 45, and 46 were of and concerning Mrs. Rachmuth and EFA, as described herein.

252.    The words uttered by Defendants by means of Defamatory Publication Nos. 4-8 and 49-50 defamed and slandered Mrs. Rachmuth and EFA.

253.    The false statements are defamatory when considered in connection with innuendo, colloquium, and the circumstances in which they were made, thus constituting slander per quod.

254.    Mrs. Rachmuth and EFA have suffered presumed and actual damages, including but not limited to actual monetary damages in the form of lost earnings and lost revenue, in excess of Twenty-Five Thousand Dollars ($25,000.00), proximately caused by Defendant, as a result of her defamation of Mrs. Rachmuth and EFA, in a specific amount to be proven during the trial of this matter.

255.    Mrs. Rachmuth and EFA is entitled to punitive damages as more specifically set forth above as allowed by law.

## FIFTH CLAIM FOR RELIEF
(Malicious Prosecution)

256.    Plaintiffs incorporate by reference paragraphs 1 through 255 of this Complaint as if fully set forth herein.

257.     Defendant initiated the above-referenced criminal charges against Mrs. Rachmuth, including the numerous cyberstalking charges, the FEC investigation she initiated in association with and in conspiracy with her associates, and the cyberstalking charges she initiated in association with and in conspiracy with Lynn Hoosier, out of malice and without probable cause. Upon information and belief, Defendant has falsely reported to the police that Mrs. Rachmuth is stalking her on seven different occasions.

258.     Defendant has repeatedly in her numerous online posts and videos bragged about the fact that she has caused Mrs. Rachmuth to now have criminal charges against her that will remain on her record, even though she knows the criminal charges are ones that she filed herself, without any merit, and knowing full well that the charges already have been, or will be dropped. Defendant has discussed in her videos and bragged about the fact that Mrs. Rachmuth will now have to explain to future employer that she had criminal charges brought against her.

259.     Defendant initiated cyberstalking complaints and/or charges, and the FEC complaints in coordination with her associates, against Mrs. Rachmuth knowing that there was no basis for the charges and only initiated the complaints and/or charges for the purpose of inflicting harm and damages to Mrs. Rachmuth.

260.     All of the criminal complaints/charges against Mrs. Rachmuth have been or will be terminated in Mrs. Rachmuth's favor.

261.     Mrs. Rachmuth has suffered humiliation, embarrassment and special damages including physical, mental and emotional distress, medical expenses, monetary damages and loss of income (including, but not limited to loss of earnings and income), as a result of Defendant's malicious prosecution and is entitled to recover damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

262.    These damages were reasonably foreseeable and were proximately caused by Defendant's malicious prosecution.

## SIXTH CLAIM FOR RELIEF
(Abuse of Process)

263.    Plaintiffs incorporate by reference paragraphs 1 through 262 of this Complaint as if fully set forth herein.

264.    Defendant, both on her own and in association with her associates and Lynn Hoosier, had issued criminal complaints/charges and FEC complaints against Mrs. Rachmuth for an ulterior motive, that motive being to intimidate, threaten, harass, and professionally damage Mrs. Rachmuth.  Defendant's ulterior motive was also to maliciously embarrass and humiliate Mrs. Rachmuth.

265.    After process was issued, Defendant abused the process by publicly announcing on all of her social media accounts and through videos, text messages, and emails, that Mrs. Rachmuth had criminal charges against her, when Defendant knew full well that she was the one that had initiated the charges, either herself or in conspiracy with her associates, and when she knew that the charges were without merit and baseless, solely to embarrass, humiliate, and professionally damage Mrs. Rachmuth.

266.    Defendant had the criminal complaints/charges and FEC complaint issued against Mrs. Rachmuth that have been referenced herein in order to achieve a purpose not within the intended purpose of the process used.

267.    Defendant's actions in having the criminal complaints/charges and FEC complaint referenced herein issued against Mrs. Rachmuth, constitutes a willful and improper act to further Defendant's interests in a collateral matter, i.e.—her professional interests, and her  perverted obsession in destroying Mrs. Rachmuth and EFA's personal and professional reputation and

standing within their professional community, and the community in general, and constituted a malicious perversion and misapplication of lawfully and/or unlawfully issued process as a vehicle to gain an advantage in a collateral matter.

268.   As a direct and proximate result of Defendant's abuse of process as alleged herein, Mrs. Rachmuth and EFA has suffered actual and special damages, including but not limited to physical pain, medical expenses, mental suffering and monetary damages, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

**SEVENTH CLAIM FOR RELIEF**
(Civil Conspiracy)

269.   Plaintiffs incorporate by reference paragraphs 1 through 268 of this Complaint as if fully set forth herein.

270.   Defendant, Lynn Hoosier, and other associates ("Conspirators"), joined together in an agreement to commit unlawful acts, or do lawful acts in an unlawful way.

271.   In pursuit of their civil conspiracy, the above-named Conspirators conspired to unfairly and wrongfully file baseless and meritless criminal complaints and charges to publicly embarrass and humiliate Mrs. Rachmuth and to permanently damage EFA.  The Conspirators committed other unlawful and wrongful actions in pursuit of their conspiracy as further detailed in paragraphs 11 through 206, 257 through 261, and 264 through 268, above, and as may further be revealed through discovery and at trial.

272.   The Conspirators conspired to commit these acts secretly, without public knowledge, and they concealed their plans and actions from Plaintiffs and others.

273.   The actions of Defendant were malicious, willful, and wanton.  Plaintiffs have been damaged by Defendant's unlawful actions in furtherance of said conspiracy, and Plaintiff is

entitled to recover damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

## EIGHTH CLAIM FOR RELIEF
(Unfair and Deceptive Trade Practices)

274.    Plaintiffs incorporate herein by reference paragraphs 1 through 273 of this Complaint as if fully set forth herein.

275.    As set forth above, specifically including but not limited to paragraphs 11 through 206, 257 through 261, and 264 through 268, above, and in other ways to be established through discovery and at trial, Defendant acted in a manner which had the capacity or tendency to deceive and acted unfairly.

276.    Defendant and Mrs. Rachmuth both work and make their living as professional freelance journalists and political activists.  Defendant's deceptive actions as set forth herein were intentionally directed at harming Mrs. Rachmuth and EFA's business and destroying Mrs. Rachmuth's career to then better her own career and earnings.

277.    Defendant's actions, as set forth herein, were acts in or affecting commerce and constitute unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 et seq.

278.    Defendants' unfair and deceptive trade practices have directly and proximately caused Plaintiffs damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

279.    By reason of the foregoing, Plaintiffs are entitled to have their damages trebled and have the costs of this action, including reasonable attorney's fees, taxed against Defendant, pursuant to N.C. Gen. Stat. § 75-16 and N.C. Gen. Stat.§ 75-16.1.

## NINTH CLAIM FOR RELIEF
(Punitive Damages)

280.    Plaintiffs incorporate herein by reference paragraphs 1 through 279 of this Complaint as if fully set forth herein.

281.    Defendant knew or should have known that Defamatory Publication Nos. 1-51, as referenced herein, were false and defamatory, and she knew that the publication of said defamatory publications would inflict serious harm, injury, and damage upon Mrs. Rachmuth and EFA. Defendant's actions as described herein demonstrate a conscious and intentional disregard of and indifference to the rights and safety of Mrs. Rachmuth and EFA, which Defendant knew or reasonably should have known was reasonably likely to result in injury, damage, or harm to Mrs. Rachmuth and EFA.

282.    Defendant's actions alleged herein constitute willful and wanton conduct.

283.    Defendant's dislike and disdain for Mrs. Rachmuth and EFA is well established through the numerous public posts and published videos in which Defendant brags about causing damage to Mrs. Rachmuth and EFA and her "winning" her personal vendetta against Mrs. Rachmuth and will be established through other evidence at trial.

284.    Defendant acted with ill will and common law malice in publishing Defamatory Publication Nos. 1 through 51.

285.    Defendant's actions of willful and wanton conduct, ill will, and common law malice will be established in other ways through discovery and trial.

286.    As a direct and proximate result of the willful and wanton conduct, ill will, and malice of Defendant, Mrs. Rachmuth and EFA have been damaged generally and specially in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

287.    An award of punitive damages is warranted to punish Defendant's egregious conduct and to deter Defendant and others from engaging in similar conduct in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against the Defendant as follows:

1.      That Plaintiffs have and recover against the Defendant all such monetary relief, injunctive relief, and equitable relief to which Plaintiffs may be entitled under the law, including but not limited to compensation for mental anguish, injury to reputation, injury to moral character, humiliation, embarrassment, loss of business, loss of income, loss of earnings capacity, loss of enjoyment of life, and other out-of-pocket expenses;

2.      That Plaintiffs have their damages trebled, and that Plaintiffs recover their reasonable attorneys' fees pursuant to N.C. Gen. Stat. § 75-1.1, *et seq.,* or as otherwise allowed by law;

3.      That Plaintiffs have and recover punitive damages against Defendant,

4.      That judgment against Defendants bears interest from the time of the institution of this action or earlier as provided by law;

5.      That the costs of this action, including reasonable attorney's fees as allowed by law, be taxed against Defendant;

6.      That Defendant be ordered to issue a public retraction, apology, and removal of the false statements as contained herein;

7.      That the Court grant a trial by jury on all issues so triable; and

8.      For such other and further relief as may be deemed appropriate by the Court.

This the 30th day of November, 2023.

DeMENT ASKEW & JOHNSON, LLP

By: _____
James T. Johnson
N.C. State Bar No. 19087
Jonathan W. Martin
N.C. State Bar No. 49381
Post Office Box 711
Raleigh, North Carolina 27602
Tel:    919-833-5555
Email: jjohnson@dementaskew.com
          jmartin@dementaskew.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that the foregoing First Amended Complaint was served upon all parties of record by electronic transmission and by mailing a copy thereof to Defendant's counsel of record at the address(es) indicated below with the proper postage attached and deposited in an official depository under the exclusive care and custody of the United States Postal Service in Raleigh, North Carolina, on the _30th_ day of November, 2023.

**DEMENT ASKEW & JOHNSON, LLP**

By: _____
James T. Johnson
Jonathan W. Martin
P.O. Box 711
Raleigh, NC  27602
Telephone:  (919) 833-5555
*Attorneys for Plaintiff*

**SERVED:**

Kari Donovan
106 Preston Ridge Court
Cary, NC 27513
karidonovan101@gmail.com